| | |
|---|---|
| DISTRICT COURT,<br>BOULDER COUNTY, COLORADO<br>1777 6th Street<br>Boulder, CO 80302 | DATE FILED: June 19, 2020 10:19 AM<br>FILING ID: A214A81DC3BEB<br>CASE NUMBER: 2020CV30506 |
| Plaintiff:     IKEDA PROPERTIES, INC.,<br><br>v.<br><br>Defendant:     OWNERS INSURANCE COMPANY. | ▲COURT USE ONLY▲ |
| *Attorneys for Plaintiff:*<br>Sean B. Leventhal, #42371<br>Jonathan S. Sar, #44355<br>Richard Daly, # 51941<br>John Scott Black, # 50440<br>Daly & Black, P.C.<br>2211 Norfolk Street, Suite 800<br>Houston, TX 77098<br>Phone: (713) 655-1405<br>Fax:     (713) 655-1587<br>Email: sleventhal@dalyblack.com<br>        jsar@dalyblack.com<br>        rdaly@dalyblack.com<br>        jblack@dalyblack.com<br>        ecfs@dalyblack.com | Case Number:<br><br>Division:<br><br>Courtroom: |
| **COMPLAINT FOR DAMAGES AND JURY DEMAND** | |

Plaintiff Ikeda Properties, Inc., ("Ikeda Properties"), by and through its attorneys, Daly & Black, P.C., for its original complaint against Owners Insurance Company ("Owners"), alleges as follows:

### NOTICE TO ELECT EXCLUSION FROM C.R.C.P. 16.1 SIMPLIFIED PROCEDURES

Plaintiff, by and through its attorneys, hereby certifies that Plaintiff's claims against Defendant exceed $100,000, inclusive of any statutory or contractual attorney fees, penalties or punitive damages, but exclusive of interest and costs.

1

Pursuant to C.R.C.P. 16.1, Plaintiff opts out of the simplified procedures described in C.R.C.P. 16.1.

## PARTIES, JURISDICTION AND VENUE

1. Ikeda Properties is a corporation located in Colorado which was insured by Owners at all times described in this Complaint.

2. Owners is a foreign corporation doing business in Colorado and may be served by serving its registered agent for service of process, The Corporation Company, 40600 Ann Arbor Rd., E., Suite 201, Plymouth, MI, 48170.

3. Ikeda Properties is the owner of the subject property, located at 310-390 Lashley St., Longmont, CO 80504 (the "Property"). At all relevant times, Ikeda Properties is and was the beneficiary of a property insurance policy covering the Property issued by Owners (the "Policy").

4. Venue is proper in this Court pursuant to C.R.C.P. 98 because Ikeda Properties is and was located in Boulder County at all times relevant to this case and all activities alleged herein occurred in Boulder County.

5. All of the acts described in this Complaint occurred in the State of Colorado under Colorado law, and involve an insurance policy governed by Colorado law.

6. This Court has personal and subject matter jurisdiction over this case pursuant to Colo. Rev. Stat. §§ 13-1-124 1(a), (b), and (c).

## GENERAL ALLEGATIONS

7. On or about June 19, 2018, a hail and wind storm struck the Longmont, Colorado area. During the course of the storm, Ikeda Properties was severely damaged by wind and hail.

8. Ikeda Properties consists of three (3) commercial buildings located at 310, 340, and 390 Lashley Street in Longmont, Colorado. Each of the commercial buildings is leased to various commercial tenants, including Odyssey Yoga Studio, Colorado Aromatics, Dimensions Salon and

2

Spa and Rainbow Laundry. The Property was severely damaged, and the damage included, without limitation, all roof surfaces, soft metals, siding, HVAC and other exterior components, as well as interior leakage due to water intrusion from the storm damage to the roofing system.

9.  On or about August 7, 2019, Ikeda Properties filed a claim with its insurance company for hail damage to all three (3) insured locations. Owners assigned the claim to an insurance adjuster.

10. On August 14, 2019, Owners' adjuster met the licensed contractor for Ikeda Properties at the Property to perform a storm damage inspection for said hail damage claim. However, the adjuster from Owners refused to render a coverage decision or provide a reasonable basis why a coverage decision could not be reached at the time of inspection. Owners' adjuster elected to retain an engineer and failed to adjust the claim for Ikeda Properties.

11. On August 15, 2019, the contractor for Ikeda Properties submitted a hail report to Owners' adjuster showing a date of loss demonstrating the Property was damaged by hail approximately two (2) inches in diameter on June 19, 2018.

12. On August 15, 2019, Ikeda Properties confirmed via email with Owners' adjuster that the date of loss claimed was "6/19/18."

13. On August 22, 2019, the engineer retained by Owners, Paul Murray with Envista Forensics, inspected the Property with instructions "to determine the extent of hail-related damage, if any, to the buildings' built-up roofing (BUR) and exterior stucco cladding as a result of the June 18, 2019 storm event." However, as aforementioned, Ikeda Properties claimed storm damage on "6/19/2018." Further, Owners' adjuster acknowledged to Ikeda Properties: "I received the hail report from [Ikeda Properties contractor] and the hail storm shows a date of 06/19/2018."

14. Further, Owners' adjuster "requested that Envista determine the cause(s) of the reported interior water intrusion at the buildings, and specifically, whether said water intrusion resulted from hail-caused breaches in the roof coverings."

3

15. On September 9, 2019, the Owners' engineer submitted the requested report to Owners' adjuster. The Report of Findings issued by Owners' engineer recognized the following:

a) Approximately three or four years prior to the inspection, the owner of the buildings had a surface coating applied to the existing underlying built-up roofing; additionally, sprayed polyurethane foam (SPF) was also applied to the roof in some areas between the existing BUR and the surface coating, particularly around equipment curbs and similar roof features.

b) Historical weather data regarding hail was collected in the vicinity of the buildings for the 2018 and 2019 calendar years.

c) Owners' possessed and provided its engineer with a "Hail Impact Report, prepared by Interactive Hail Maps, dated July 17, 2019."

d) There was a hailstorm some time in 2018 (exact date not known) that was believed to have caused damage to the roofing (BUR, surface coating etc.), but then there was another storm several weeks prior to the inspection that was believed to have caused additional damage.

e) The built-up roofing and SPF beneath the surface coating was believed to be saturated as a result of the storm event(s); photographs were taken with a drone and thermal imaging camera, which showed moisture under the coating.

16. The Report of Findings issued by Owners' engineer further concluded as follows:

a) Furthermore, hailstone impact damage to SPF roofing is typically evidenced by a random distribution of roughly circular fractures (radical or concentric) or punctures in the surface coating accompanied by divots or fractures in the underlying foam.

b) However, isolated roughly-circular indentations in the SPF along the southern edges of mechanical equipment curbs, as well as coinciding radial/circular fractures in the surface coating, were observed on all three buildings which were consistent with hailstone impacts to these more impact-prone surfaces.

17. On September 30, 2019, several weeks after Owners' adjuster refused to adjust the damage claimed and received said findings from the engineer Owners elected to retain, Ikeda Properties had received no response on whether the claim for the Property would be covered.

18. On October 2, 2019, Don Brennan, managing agent of Ikeda Properties (hereinafter "Mr. Brennan"), emailed Owners' adjuster and stated: "We are experiencing roof leaks at 310 Lashley that is causing additional damage inside the units and disrupting tenants. Will you let me know the status of this claim? We have a new tenant and they are expressing concerns that the roof is leaking."

19. On October 3, 2019, Mr. Brennan emailed Owners' adjuster and stated: "With the ongoing leaking I need your help on the status of this claim and if we can make temporary repairs to alleviate the potential for additional damage and disturbance to our tenants businesses. If any try to constructively evict themselves the cost of defending the lease and possible losses sustained would likely escalate the loss of the claim. Please advise today if possible."

20. On October 7, 2019, Mr. Brennan emailed Owners' adjuster and stated: "I have been emailing and calling and trying to bring this to a resolution and with a slow response. The roof is leaking and causing damage and compromising a new tenants lease. If Auto Owners wants to deny the claim or try to state that the hail only damaged metal portions not associated with the roof system than make your assertion and we can go from there. Please assert your findings and what you are prepared to insure or not insure this week. Thanks."

21. On October 10, 2019, Mr. Brennan emailed Owners' adjuster: "Will you provide an update on this? Thanks."

22. On October 15, 2019, Owners' adjuster sent a Coverage Position Letter to Ikeda Properties, stating in relevant part:

a) This letter is in reference to a hail claim that was submitted to Owners Insurance Company with a reported date of loss of June 18, 2018.
b) The effective date of your policy is April 17, 2018 through April 17, 2019.
c) I inspected the property on August 14, 2019, during my inspection I found water pooling and wear and tear on the roof.
d) We hired Envista Forensics to help us with our investigation of the property.
e) No hail damage was found to the surface-coated BUR nor SPF coverings in the filed of the three roofs.
f) The interior water damage is not due to a storm created opening in the roof or the exterior of your building. Enclosed is a copy of his report.

23. Notably, Owners provided Envista Forensics with the date of loss for the storm event said to be claimed by Ikeda Properties. As aforementioned, the Envista report states Owners hired

5

them to investigate damage "as a result of the June 18, 2019 storm event." Notwithstanding the direction to investigate damage as a result of date on an entirely different year than the "6/19/18" date specified by Ikeda Properties and its contractor, the Envista report states: "There was a hailstorm some time in 2018 (exact date not known) that was believed to have caused damage to the roofing (BUR, surface coating etc.), but then there was another storm several weeks prior to the inspection that was believed to have caused additional damage."

24. However, according to the Envista report pursuant its August 22, 2019 inspection, Owners provided Envista with a "Hail Impact Report, prepared by Interactive Hail Maps, dated July 17, 2019." This Hail Impact Report indicated "1.75" inch hail fell "at location" of the Property on June 19, 2018 and failed to indicate any hail "several weeks prior to the inspection" on August 22, 2019 because said alleged date "weeks prior to the inspection" had yet to occur.

25. On October 16, 2019, Owners' adjuster emailed Ikeda Properties a copy of Owners' proposed repair estimate, the engineers report and Coverage Position Letter dated October 15, 2019.

26. Owners sent Ikeda Properties a line-item estimate, dated October 15, 2019, containing a scope of work to be performed due to hail damage to all three (3) insured building locations on the Property.

27. Despite the interior water damage and the fact that the integrity of the underlayment to all three (3) roof systems on the Property had been compromised due to having been saturated with moisture from the storm damage, Owners' estimate proposed to merely apply a liquid roof coating to repair a small portion of each roof.

28. Owners' knew or should have known the proposed reapplication of a liquid coating to the roof coverings of the Property would be improper and below industry standards because, among other things, it would have resulted in the growth of mold, further deterioration of the roof materials and compromise the structural integrity of the Property. The total replacement cost value

estimated by Owners for the Property was $15,079.60 for a partial liquid coating over top of the compromised roof systems. This estimate provided, "$8,475.95 for 340 Lashley St, $3,920.84 for 310 Lashley St., and $2,682.81 for 390 Lashley St. Since the damages are less than your deductible, we are not able to make payment for your loss."

29. On October 16, 2019, Owners' adjuster told Ikeda Properties: "Please provide me with a copy of your repair estimate when you get one."

30. On October 18, 2019, Ikeda Properties provided Owners with an estimate and photo report approximating $557,835.96 for replacement of the compromised roof systems in order to protect the structural integrity of the Property. Owners' received documentation from Ikeda Properties' licensed contractor explaining how the repair estimate proposed by Owners was insufficient and why the hail-damaged roofs on all three (3) buildings must be replaced as soon as possible, stating:

> This estimate below reflects a full roof replacement for 310, 340 and 390 Lashley. Upon inspection of these properties it is apparent that <u>all 3 buildings have suffered extensive hail damage that has fractured the current elastomeric coating</u> and leaving the SPF and Built up material exposed causing water intrusion into the roof system. <u>Because there is moisture in the system a repair cannot be completed</u>.

31. On October 30, 2019, Owners confirmed the roof replacement estimate submitted by Ikeda Properties' licensed contractor "was being reviewed and in the process of being re-assigned."

32. On November 7, 2019, Owners confirmed it had made no movement regarding the claim allegedly "being re-assigned." During this time, Ikeda Properties was actively taking reasonable steps to mitigate further damage to the Property due to Owners' failure to tender policy benefits reasonably necessary to repair the damage claimed.

33. For several months thereafter, Owners refused to pay or deny the claim and refused to respond to the estimate submitted by Ikeda Properties to replace the hail-damaged roofs all three (3) buildings on the Property as requested by Owners' adjuster.

34. After no response from Owners, Ikeda Properties retained Becker Engineering ("BE") to perform a Damage Cause and Origin Assessment of the Property. BE visited the Property on December 20, 2019 to inspect and investigate the existence, extent and reparability of damage related to a severe hailstorm.

35. On January 27th, 2020, Owners was forwarded a copy of BE report opining the damage to the roof hail on the date claimed and includes a storm report from June 19, 2018 to demonstrate. In stark contrast to the storm report findings of Envista Forensics, the report created by Becker Engineering on January 24, 2020, revealed large hail struck all three (3) buildings on the Property on 6/18/19 and 6/19/19, in direct correlation with the hail damage claimed by the insured:

> Radar algorithms CoreLogic and Interactive Hail Maps both show large hail (.8" to 1.75") on site on 6-18/19-18 which correlates with onsite observations. This correlates with leaks starting in 2018 and early 2019. Note that leaks to the interior may be delayed as water migrates through the layers of foam and membrane to the decking. Other nearby high wind and hail observations were ruled out based on distance, magnitude and owner's accounting of damages on site.

36. Contrary to the assertions of Owners' adjuster, the Becker Engineering report states:

a) Roof hail impact and wind type damage was observed and documented. The coated modified bitumen roof, the modified bitumen roof system and the modified bitumen membrane roof has impact damage at localized impact areas and the roof system must be replaced to re-establish original value, wear and water intrusion resistance.

b) The coated EPDM roof system is damaged and leaking. The roof must be fully replaced to adequately address water intrusion resistance and adequate bonding.

c) New leaks were identified and measured from below. Timing of the leaks was confirmed with occupants, who had been present since before and during the storm and were familiar with the interior. Older leaks and those with no historical information were ruled out. Intrusion pathways for qualifying leaks were subsequently documented above the recent leak areas on the roof. In all cases, roof loss of seal and impact damage (some patched) was present above the leak areas. The leak areas showed a direct correlation to damaged SPF that allows a direct avenue for water migration into the roof system. Details were documented on the attached drawings. Based on the owner accounting, observations, and measurements, there were new leak areas related to roof system damage documented in the drawings and photographs.

d) BE does not recommend patching or coatings as permanent repair because there is inadequate seal (bond) between coatings and old roofing, plus this doesn't address high moisture within the roof. Note that if excess moisture sources are not eliminated before

and after repairs or reconstruction occurs, excess mold growth and water damage will likely recur.

37. "In response to this new engineering report, Owners Insurance Company deployed a third engineer." Despite alleging that this newly enlisted engineer "completed his investigation independent of any other reports," Owners' adjuster admitted "Owners Insurance Company also asked him to review the report from Becker Engineering and speak to the findings in that report."

38. Owners subjectively tasked a second engineer at the same firm with the "supplemental purpose" of providing an opinion in disagreement "about the relationship between water penetration and alleged hail impacts on the roof."

39. Despite Owners' knowledge of the risk to the structural integrity of the insured's Property, Owners' adjuster refused to reconsider Ikeda Properties coverage decision until Owners received a "supplemental conclusion" from its second engineer at Envista Forensics.

40. It was until several months later, on March 12, 2020 that Owners' second engineer took the opportunity to visit the insured Property or otherwise physically review the roofs on any of the three (3) insured buildings.

41. On April 4, 2020, Envista Forensics generated the "Supplemental Conclusion" requested by Owners' adjuster, blanketly alleging: "The hail-related blemishes were not sources of water penetration."

42. On April 9, 2020, Owners' adjuster sent Ikeda Properties a second Coverage Position Letter acknowledging receipt and review of the report for Becker Engineering including a Hail Impact Report clearly indicating "1.75" inch hail fell on June 19, 2018 "At Location" of the Property and showed up to "3.00" inch hail was reported "in the area."

43. On April 9, 2020, Owners' adjuster unreasonably concluded: "While these report indicate large hail stone fell in the surrounding areas of your property, these large hail stones were not on the building themselves."

9

44. On April 9, 2020, despite evidence of the direct correlation between the exterior and interior damage from the storm date claimed, Owners unreasonably concluded: "Since the interior leaks are not a result of a storm caused opening, the interior water is not covered under this claim."

45. On April 9, 2020, Owners' adjuster decided without any foundation that the damages continuously claimed by the insured "appear to be related to people walking on the roof." Owners' adjuster unreasonably concluded "this is new damage and is not related to the June 18, 2018 storm, those damages would not be covered on this claim."

46. In Owners' first Coverage Position Letter, dated October 15, 2019, Owners decided the hail damage claimed by Ikeda was a covered loss; however informing the insured that "an estimate has been completed" for "damages to your property" but "the damages are less than your deductible."

47. In Owners' second Coverage Position Letter, dated April 9, 2020, Owners had no reasonable information or basis to deny the scintilla coverage previously offered and estimated in the first Coverage Position Letter dated October 15, 2019.

48. On April 9, 2020, Owners decided for the first time to "exclude this damage from being covered by [the] policy."

49. On April 9, 2020, Owners made "[t]he determination that there is no coverage for the claim submitted" without any reliable information or reasonable basis over seven (7) months after Ikeda Properties filed the claim for hail damage to the Property.

50. On May 20, 2020, Ikeda Properties retained the services of a licensed public adjuster, Taylor Grant with Bellator Claims, to protect and enforce Ikeda's policy rights and provide a comprehensive good faith estimate for all damages covered under Ikeda Properties claim.

51. On May 22, 2020, the public adjuster for Ikeda Properties asked Owners' adjuster for answers to the following questions:

a) Has a proof of loss been submitted by the insured or any of their representatives?

b) Suit against carrier – how long does the client have?

c) What's needed to put a tolling agreement in place?

d) Can you please provide a Statement of Loss?

52. On May 26, 2020, Owners' adjuster replied:

a) A proof of loss has not been submitted to date.

b) Suit against carrier – for any legal questions I will have to direct you to your legal counsel.

c) For a tolling agreement, both parties would need to agree to toll the statute.

d) You have requested a Statement of Loss, I'm assuming you are asking for a Proof of Loss form. I have attached one to this e-mail. If that is not what you are asking for, please let me know.

53. On May 26, 2020, Ikeda Properties public adjuster responded to Owners' adjuster:

a) What does it state in your policy for suit against carrier?

b) I am NOT asking for a Proof of Loss, I'm asking for a Statement of Loss.

c) Please provide both the suit against carrier info and the Statement of Loss.

d) If you're unable to help me, please provide me with the information of your supervisor.

54. Owners' adjuster replied to the insured's public adjuster as follows:

Per the Commercial Property Conditions, legal action against us must be brought within 2 years after the date on which the direct physical loss or damage occurred. In regards to the Statement of Loss, I am happy to provide the requested documentation once I understand what document you are specifically looking for. Can you please clarify what you mean by Statement of Loss?

55. On May 26, 2019, Ikeda Properties' public adjuster wrote Owners' adjuster stating:

The statement of loss is a document that shows how much money you, as the carrier, have assigned to the claim. How much has been paid on the claim? If it's below the deductible amounts then how much has been assigned but not paid due to deductibles? Also, I need to know what duties of the policy need to be met by the insured at this point. Can you please provide?

56. On May 29, 2020, Owners' adjuster replied to the Ikeda Properties' public adjuster:

Thank you for clarifying. As of today, no payments have been made under the policy. I have attached a copy of our Coverage Position Letter outlining our position in regards to the damages being claimed.

It is our position based on our most recent engineer report that the damage on the roof was not caused by hail.

> As you are aware, I have requested that a certified copy of the policy be sent to you. In the meantime, I have attached an uncertified copy for your review. All policy terms and conditions are in effect and must be met.

57. Upon learning of Owners' position regarding the alleged date to exercise Ikeda Properties' rights to the policy, the public adjuster respectfully requested a tolling agreement on the claim in order to have a fair opportunity to adjust the claim on the Ikeda Properties' behalf.

58. On June 8, 2020, Owners' adjuster unreasonably denied the public adjuster's request and stated:

> Thank you for your patience while I reviewed your request to toll the statute. At this time, we are not agreeing to a tolling agreement on this claim. For us to consider additional information on this claim, please submit it to me by June 18, 2020.

59. On June 13, 2020, the public adjuster retained by Ikeda Properties provided a Proof of Loss signed and notarized by the insured with an accompanying estimate totaling $1,085,724.91 to properly and reasonably repair the buildings to pre-loss condition. This estimate detailed significant replacements and repairs necessitated and caused by the hail damage claimed on the Property.

60. The claim was unreasonably denied and delayed because Owners wrongfully refused to issue any payment to repair the obvious hail damage the storm caused to the Property and failed to address significant areas of damage to the Property.

61. Upon receiving Owners' incomplete estimate, Ikeda Properties' contractor issued an estimate outlining the scope of work required to repair the damage to the roofs of the Property and provided a reasonable valuation of the cost to perform said work.

62. On October 18, 2019, Owners failed to give a reasonable basis why it would not provide policy benefits in accordance with the $557,835.96 replacement cost estimate written by the insured's licensed contractor solely to replace the hail-damaged roof systems on the Property when they were in dire need of proper and reasonable adjustment and repair.

63. On June 13, 2020, Owners failed to give a reasonable basis why it would not provide policy benefits in accordance with the $1,085,724.91 replacement cost estimate, scope of work and written Proof of Loss produced by a licensed public adjuster representing the Insured.

64. Despite receiving information that insurance professionals and roofing specialists found significant hail damage and water intrusion was caused by large hail on June 19, 2018 at the precise location of the Property, Owners not only refused to reconsider, but unreasonably reversed its previous decision over six (6) months after estimating for damage to the roof caused by hail at the Property on June 19, 2018.

65. There was no reasonable basis nor other information to support Owners' decision to state deny any and all damage to the roof caused by hail over seven (7) months after Owners verified and estimated to repair hail damage to the roof.

66. To date, Ikeda Properties has not been able to complete the work required because Owners wrongfully refused to issue any payment sufficient to repair the damage the storm caused to the Property, failed to address significant areas of damage to the Property, and failed to provide any payment for all coverage implicated in the Ikeda Properties' loss. Furthermore, any policy benefits that should have been provided were unreasonably delayed because Owners continuously refused to tender payment to perform the replacement and/or repairs necessary to put Ikeda Properties back in its pre-loss condition.

67. Owners wrongfully and unreasonably denied Ikeda Properties' claim for repairs to the Property even though the Policy provided coverage for losses such as those suffered by the Ikeda Properties. Owners also failed to adequately and reasonably investigate the Ikeda Properties' claim for damages, resulting in significant and unreasonable delays in the handling of the Ikeda Properties' claim.

68. Owners failed to perform its contractual duties to adequately compensate Ikeda Properties under the terms of the Policy for the damages sustained by his Property, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by the Ikeda Properties. Owners' conduct constitutes a breach of the insurance contract between Owners and Ikeda Properties.

**PLAINTIFF'S FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

69. Ikeda Properties realleges and incorporates by reference all prior allegations of this Complaint as if full set forth herein.

70. A contract of insurance existed between Owners and Ikeda Properties; namely, the Policy.

71. The Policy provides replacement cost coverage, which, according to Owners, pays the cost to repair or replace the damaged property, subject to the Policy's limit of liability.

72. The Policy requires Owners to pay replacement cost benefits for covered losses.

73. The Policy requires Ikeda Properties to pay insurance premiums in exchange for replacement cost coverage, which Ikeda Properties did.

74. Hail and wind damage are covered losses under the Policy.

75. The weather event and the damage caused by such weather event, both of which are described above, constitute a covered loss under the Policy.

76. Owners failed to issue an estimate reasonably deciding coverage and denied the claim.

77. Without limitation, Owners failed to provide policy benefits reasonably necessary to pay for repair and/or replacement of Ikeda Properties' hail-damaged property.

78. Owners did not pay what the Policy required, because Owners determined, without a reasonable basis, that the roof was not seriously damaged on the date of loss claimed, then decided,

14

with no reasonable basis, that the roof was not damaged from hail on the date of loss claimed and any damage that is present is "related to people walking on the roof" and unrelated to the date of loss claimed.

79. Such failure constitutes a breach of contract.

80. Owners breached its contract by, among other things, failing to pay Ikeda Properties for the losses claimed and by compelling Ikeda Properties to institute litigation to recover amounts due under the agreement of insurance with Owners.

81. As a result of Owners' actions and/or inactions, Ikeda Properties has sustained damages and losses in amounts to be proved at trial and for which Defendant is liable.

### PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (VIOLATION OF C.R.S. 10-3-1115 AND 1116)

82. Ikeda Properties realleges and incorporates the previous allegations as if fully set forth herein.

83. At all times pertinent hereto, the following statute of the state of Colorado was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

(1) (a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

84. C.R.S. §10-3-1116 provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees, court costs, and two times the covered benefit."

85. Owners' denial of Ikeda Properties, by letter alleging new damage or excessive wear and tear, was not only without a reasonable basis, but in deliberate disregard of the information Owners was provided and possessed in their own claim file.

15

86. Upon being put on notice of the requisite information necessary to make a reasonable coverage decision, Owners refused to alter or change its decision to unreasonably deny any and all policy benefits to Ikeda Properties.

87. Ikeda Properties' claim was evident and was so open and obvious that any reasonable insurer would have paid the benefits necessary to perform the replacement and repairs in accordance with the industry standard and put the Property at Ikeda Properties back in its pre-loss condition.

88. By continually denying and refusing to provide a reasonable basis for withholding payment of benefits necessary to repair the total damage done to the Property, Owners has unreasonably denied and delayed payment to Ikeda Properties in violation of C.R.S. §10-3-1115.

89. Owners is subject to the provisions of C.R.S. §10-3-1116 for double damages, court costs, and attorney fees in addition to those claimed elsewhere in this Complaint.

## PRAYERS FOR RELIEF

WHEREFORE, Ikeda Properties prays for damages against Owners as follows:

a. Damages for breach of contract, including the value of benefits Ikeda Properties was entitled to receive under the Policy that were not provided; damages for delayed payment; consequential damages; and reasonable interest on delayed payment;

b. Compensatory damages against Owners including economic and noneconomic damages;

c. Double damages, court costs, and reasonable attorneys' fees incurred in prosecuting this action pursuant to C.R.S. §10-3-1116;

d. An award of pre and post-judgment interest, and costs; and

e. Such other and further relief as this Court may deem just, equitable or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted June 19, 2020.

                                          */s/ Jonathan S. Sar*
Jonathan S. Sar, No. 44355
Sean B. Leventhal, No. 42371
Richard Daly, No 51941
John Scott Black, No. 50440
Daly & Black, P.C.
2211 Norfolk Street, Suite 800
Houston TX 77098
Phone Number: 713-655-1405
Fax Number: 713-655-1587
Email: sleventhal@dalyblack.com
       jsar@dalyblack.com
       rdaly@dalyblack.com
       jblack@dalyblack.com
       ecfs@dalyblack.com
*Attorneys for Plaintiff*

**Address of Plaintiff:**
1221 N Downing St. APT 1
Denver, CO 80218